THOMAS FOSTER, Appellant, *vs.* ALEXIS BAILLEY, ET AL., Respondents.

This was an Appeal from the judgment of the District Court of the County of Dakota, Third Judicial District, (Judge Chatfield.)

The cause was decided upon questions of fact—as contained in the evidence which forms part of the record.

The following are the points and authorities relied upon by the Appellant:

*First.* The execution of the trust vested in said Judge, in the case under the Act of Congress, of May 23, 1844, is regulated by the rules and regulations of the Legislature of the Territory. *Act of May* 23, 1844, *5 Stat. at Large U. S.* 657.

*Second.* Under the Act of the Legislature of this Territory, of March 3d, 1855, persons claiming under the first settler or claimant, are entitled to the land. *Session Laws of Minnesota,* 1855, *p.* 28, *&c.*

*Third.* All the parties claim title through or under Alexis Bailley, as the original claimant, and the original title is not questioned.

*Fourth.* Thomas Foster exhibits a paper title to the extent of his claim, derived directly from Alexis Bailley, and prior to any other derivative title from him of which title Henry G. Bailley, Henry H. Sibley, and William G. Le Duc had notice long before they received their conveyance or claimed any title.

*Fifth.* By the writings between Thomas Foster and Alexis Bailley, of August 13, 1851, Foster's title and interest vested immediately, and the grant being executed and not executing would have been good as a gift without any consideration. 2 *Bl. Comm. p.* 441.

*Sixth.* The evidence discloses a sufficient consideration to support an executory agreement between the parties.

*Seventh.* Thomas Foster and Alexis Bailley became equal co-partners in the two claims, as described in the said writings, and the loss of one of their claims did not impair Foster's equal interest as a co-partner in the balance.

*Eighth.* The loss of one of their claims is shown to have been occasioned without any default of Foster, and is traced to the acts of Alexis Bailley.

*Ninth.* Parol testimony is incompetent to change the effect or very the terms of the writings of August 13, 1851.

The following are the points and authorities relied upon by the Respondent:

*First.* The paper writing of August 13th, 1851, does not convey or transfer, nor purport to convey or transfer, any interest whatever in the lands in question, or in any lands or

claim whatever; but is simply a designation, by name and boundaries, of several claims. It contains no reference to a consideration, and no words of transfer.

*Second.* It is not under seal and is not a grant. If any effect is to be given to it as a transfer, parol testimony is admissible to show the consideration, and explain its ambiguities.

*Third.* If the evidence discloses a contemplated consideration sufficient to support an executory agreement, it also shows an entire failure of that consideration and an entire failure of Foster to perform the agreement on his part.

*Fourth.* The agreement was made *before the survey* and is therefore inoperative to transfer any rights. The parties at that time were all trespassers upon the public lands, and the agreement was therefore against public policy and void.

*Fifth.* The Act of Congress of May 23, 1844, extends relief only to settlers upon the " *surveyed* public lands." *Vide U. S. Stat. at Large, vol.* 5, *p.* 657.

*Sixth.* Though the Statute authorizes this Court to review and pass upon questions of fact, as well as of law, in cases of this character, yet this Court in reviewing a question of fact will hesitate to disturb the decision of the Court below if there be any testimony to support it; and will observe to the fullest extent, the doctrine establised by all experience and authority, that the tribunal before whom the witness appears in person upon the stand, can judge far better of the veracity, credibility and reliability of such witness, and estimate with far greater certainty the consideration to which his testimony is entitled, than the Court of Review, who only see that testimony upon paper.

*Seventh.* The preponderance of evidence upon every question of fact in this case is clearly with the Respondents.

H. J. Horn, Hollinshead, and Sanborn & French, Counsel for Appellant.

Brisbin & Bigelow, Counsel for Respondents.

*By the Court*—Nelson, J. The proceedings in the Court

below originated under the Law of Congress, approved May 23, 1844, *U. S. Stat. at Large, vol.* 5 *p.* 657, *and the Law of the Territory of Minnesota,* 1855, *chap.* 7, *p.* 29.

They were instituted to determine the conflicting claims between the Appellant and the Respondents, to a portion of what was known as "Bailley's Addition" to the Town of Hastings, in the County of Dakota, and the statements of the parties filed with the Judge of the Court below, in accordance with the 4th section of the Territorial Law above referred to, stand as the pleadings in the case.

The record in this Court is very full and presents this case fairly, and we shall embody in our opinion only a brief synopsis of the proceedings, referring to the record, for a better narration of facts.

Foster's statement claims a deed from the Judge for the one undivided half part of lot numbered (2,) (3) and (8,) in section twenty-seven, Township numbered (115,) Range number (17,) west of 5th Meridian, or such portions as lie within the addition above mentioned.

The Respondents claim in their statement a deed for the whole of the above lots, in addition to some other tracts of land not included in this controversy.

It was conceded upon the hearing below that Alexis Bailley, one of the Respondents, was the original settler and claimant, and the Appellant and other Respondents claim to derive their title from him.

There is no dispute as to Bailley's first claim and its legality. The questions presented are purely of fact, and involve the rights of the parties as they existed at the time of the entry of the land by the Judge.

H. G. Bailley, Le Duc, and Sibley, sustain their claim by deed from Alexis Bailley, Sept. 1, A.D. 1854, in which deed an undivided three-quarters of the land is conveyed to them and they become tenants in common with the grantor of the whole tract.

Foster bases his claim upon a written acknowledgment by Alexis Bailley, given to him on the 13th day of August 1851, in which he is described as an equal partner with Bailley, in this property in dispute.

Now, if this written acknowledgment (it was in duplicate,) which declares the understanding of Foster and Alexis Bailley, in regard to the claims situated in and about the present town of Hastings, ʳimposes an obligation upon the parties, without any other: qualification than appears upon its face, then the execution of it having been admitted, Foster has the prior right, so far as the other Respondents are concerned and his claim should be confirmed.

Upon examining the writing, it is found that no consideration is expresssed upon its face, nor does it disclose upon what terms Foster and Bailley became equal partners in the claims mentioned therein, one of which is the property in dispute, and the Judge below very properly remarks, that the consideration upon which the partnership was acknowledged, and the terms upon which it was consented to, became a subject of enquiry. It was incumbent upon Foster, we think, to establish affirmatively, the causes which induced this partnership, and fully sustain, by weight of evidence, the considerations which he alleges were the inducements for the arrangement. The testimony of the two parties, Foster and Bailley, are at variance upon this point, but while no witness is introduced to corroborate the statement of Foster, we find that one witness, Truax, does in his testimony sustain the testimony of Bailley substantially, in regard to the nature of the transaction, and the motives which are alleged by Bailley to have led him to provide for Foster.

In the doubtful state of the testimony, we can come to no other conclusion than that arrived at by the learned Judge below, after a full review of the testimony.

Did Foster carry out faithfully the arrangement which had been entered into between him and Alexis Bailley? If not, was he prevented by Bailley's acts from performing on his part the terms of the contract?

We have carfully examined all the testimony which would tend to elucidate the truth in regard to this part of the controversy, and have come to the conclusion that although there appeared an evident anxiety upon the part of Foster to secure his interest in this property, and for that purpose he did personally occupy the "Eastern Claim," as it is called, a sh ort

Foster *v.* Bailley et. al.

time, he still seems from his actions to have abandoned any real claim he might have had to the premises, and turned his attention to improving and securing the claim that he occupied at the time of the hearing back of the "Lake." The precarious state of the times and the disposition manifested for jumping claims in that vicinity, should have warned Foster to have been on the alert, but he appears to have neglected his arrangements, or at least placed them in the charge of unreliable persons, thus jeopardizing his interests, and ruining the success of the project.

The charge preferred by Foster that Bailley was instrumental in bringing about the loss of the Eastern Claim, and conspiring to prevent his obtaining it, we do not think is sustained by the testimony.

It is of such a serious character and involves to a certain extent his success in this suit, that he should have affirmatively and clearly established the fact. This has not been done, and it seems very strange that Parker, who of all others, ought to have been an important witness to throw light upon this point of the transaction, and whose testimony should have sustained the charge of collusion or conspiracy to keep him out of the "Eastern Claim," was not introduced as a witness. He bore a conspicuous part in many of the important proceedings connected with these claims, and we are at a loss to account for his silence.

Foster was the only material witness to sustain his claim below, and he in no way seeks to introduce corroborative testimony. We cannot undertake to reverse the judgment upon this state of facts, and therefore must affirm the decision of the Court below.

I fully concur in the views expressed by Justice Nelson.

CHAS. E. FLANDRAU.